IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| vs. ) | Criminal No. 2014-33 |
| ) | |
| SHAQUIM FREDERICKS, ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Before the Court is defendant Shaquim Frederick's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." [ECF 150].[1] The government filed its opposition on August 24, 2018 and defendant filed his reply on April 23, 2019.[2] [ECFs 159, 170]. The matter was referred to the undersigned for a Report and Recommendation.[3]

**I.    BACKGROUND**

As the parties are familiar with the underlying facts of this case, only those facts relevant to this discussion will be recited. This matter arises out of defendant's involvement in a conspiracy to rob a jewelry store. [ECF 1]. On June 12, 2014, a federal grand jury charged defendant with

---

[1] An individual "seeking relief from federal custody files a motion to vacate, set aside, or correct sentence, rather than a petition for habeas corpus." Rule 1 of the Rules Governing Section 2255 Proceedings Advisory Committee Notes (1976).

[2] On October 15, 2018, defendant filed a letter with the Court inquiring as to the status of his motion and noting that he never received the government's opposition. [ECF 161]. Four months later, defendant notified the Court that he had been moved to a facility in Florida. [ECF 165]. Accordingly, on March 25, 2019, the Court ordered the government to re-serve its opposition. [ECF 167].

[3] General Order in Misc. Case 2018-16.

five counts: (1) Conspiracy to Interfere with Commerce by Robbery, 18 U.S.C. § 1951(a);[4] (2) Interference with Commerce by Robbery, 18 U.S.C. § 1951(a); (3) Possession of a Firearm in Furtherance of a Crime of Violence, 18 U.S.C. § 924(c); (4) Conspiracy to Possess a Firearm in Furtherance of a Crime of Violence, 18 U.S.C. § 924(o); and (5) Possession of a Firearm with an Obliterated Serial Number, 18 U.S.C. § 924(k). *Id.* On June 18, 2014, the undersigned arraigned defendant and appointed Attorney Michael Sheesley to represent him. [ECFs 8, 9].

A jury trial was held from July 21-23, 2014. The jury found defendant guilty on Counts 1, 2, and 4. [ECF 75].

Defendant appealed his conviction on February 2, 2015, but the United States Court of Appeals for the Third Circuit stayed the appeal pending the District Court's entry of judgment. [ECFs 100, 107]. The District Court entered judgment on April 20, 2015, sentencing defendant to 108 months on each count, to be served concurrently.[5] [ECF 121] at 3.

On March 1, 2016, the Third Circuit granted Attorney Sheesley's motion to substitute counsel and appointed Attorney Joseph DiRuzzo to represent defendant. On May 2, 2017, the Third Circuit affirmed defendant's judgment of conviction and sentence. *United States v. Fredericks*, 684 F. App'x 149, 165 (3d Cir. 2017). The instant motion, which was filed on April

---

[4] The Hobbs Act, 18 U.S.C. § 1951(a), provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

[5] The District Court also ordered, *inter alia*, that defendant be placed on supervised release for a term of three years following his incarceration, and that he pay a $300.00 special assessment and $678,294.44 in restitution. [ECF 121] at 4, 6.

19, 2018, is thus timely.[6]

## II.    LEGAL STANDARDS

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 allows prisoners to collaterally attack their sentences by moving "the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The remedy is intended only where "the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (quotation marks omitted); *see also United States v. Addonizio*, 442 U.S. 178, 184 (1979) (explaining that "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment").

To prevail on a § 2255 motion, a prisoner must show one of the following: (1) the sentence was imposed in violation of the Constitution or the laws of the United States, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). If the court finds any of these grounds, the court must vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. *Id*. § 2255(b).

---

[6] The Antiterrorism and Effective Death Penalty Act of 1996 establishes a one-year statute of limitations period for section 2255 motions, "running from the latest of" four specified dates. 28 U.S.C. § 2255(f) (2012). As in most section 2255 cases, in this case the relevant date is "the date on which the judgment of conviction becomes final." *Id*. Under Supreme Court Rule 13.1, defendants have 90 days from the date of the appellate court's decision to file a petition with the Supreme Court. Here, defendant's judgment of conviction became final on August 2, 2017, 90 days after the Third Circuit's decision. *See Kapral v. United States*, 166 F.3d 565, 570 (3d Cir. 1999). Therefore, the instant motion was filed within the AEDPA's one-year statute of limitations.

A § 2255 motion is not, however, a substitute for an appeal. *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009). Thus, the general rule is that a prisoner procedurally defaults on a claim if he "neglected to raise [it] on direct appeal." *Id.* (citation omitted); *accord Massaro v. United States*, 538 U.S. 500, 504 (2003). Moreover, a § 2255 motion may not "be used to relitigate matters decided adversely on appeal." *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074-75 (3d Cir. 1985) (citation omitted).

With respect to allegations of ineffective assistance of counsel, such arguments are properly raised under § 2255 rather than on direct appeal. *See Massaro*, 538 U.S. at 504 (explaining that it is "preferable" that such claims be considered on collateral review where the record for such claims may be properly developed); *accord United States v. Garcia*, 516 F. App'x 149 (3d Cir. 2013) ("It is well-settled that this Court ordinarily does not review claims of ineffective assistance of counsel on direct appeal.") (citing *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003)). Where the prisoner is proceeding *pro se*, the Court must construe the motion liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

To succeed on an ineffective assistance of trial counsel claim pursuant to § 2255, a prisoner must show that (1) counsel's representation was deficient, and (2) the deficient performance "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Regarding the "deficient" prong, a prisoner must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. *Id*. at 688-89 ("[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."); *accord Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). Regarding the "prejudice" prong, a prisoner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. In other words, counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 688.

With respect to both prongs, the prisoner bears the burden of establishing his ineffective assistance of counsel claim by a preponderance of the evidence. *United States v. Serrano*, 798 F. Supp. 2d 634, 641 (E.D. Pa. 2011) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)). In addition, because judicial scrutiny of counsel's performance is highly deferential, a prisoner must overcome a "strong presumption" that counsel's strategy and tactics "fall[] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 (alteration added). Accordingly, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (alteration added). Further, a court has discretion to dispose of a claim at either prong, as there is no required order to the *Strickland* inquiry. *Strickland*, 466 U.S. at 697 (explaining that a court need not "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "address both components of the inquiry if the defendant makes an insufficient showing on one"). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

The standard for ineffective assistance of appellate counsel is generally the same as for trial counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). When a petitioner contends appellate counsel failed to raise specific issues, a petitioner must show (1) his appellate counsel's representation fell below an objective standard of reasonableness—that is, "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them," *id.*, and (2) there is a reasonable probability that, if counsel had raised the issue on direct appeal, the result of his appeal

"would have been different." *United States v. Solomon*, 2013 WL 869648, at *24 (W.D. Pa. Mar. 7, 2013) (quoting *United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000)).

Focusing on issues most likely to prevail "is the hallmark of effective appellate advocacy." *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)). Accordingly, where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." *Smith*, 528 U.S. at 288. To overcome the presumption of competence of appellate counsel, a petitioner must show the omitted issues were "clearly stronger" than those counsel chose to assert. *Id.* (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *Hall v. Bartkowski*, 2013 WL 1385610, at *3 (D.N.J. Apr. 3, 2013) (citing *Jones v. Barnes*, 463 U.S. 745, 750 (1983) (rejecting "per se rule that appellate counsel must raise every nonfrivolous issue")).

Finally, under § 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing." 28 U.S.C. § 2255(b); *accord United States v. Padilla-Castro*, 426 F. App'x 60, 63 (3d Cir. 2011); *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) ("If [the defendant's] petition alleges any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obliged to follow the statutory mandate to hold an evidentiary hearing."). Of course, if the court can decide the issue on the record before it, such a hearing is superfluous. *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989) (holding that a district court is not required to hold a hearing if the prisoner's claims are affirmatively contradicted by the record or are clearly frivolous); *see also Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) ("[A § 2255 motion] can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are

contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). The question of whether to order such an evidentiary hearing "is committed to the sound discretion of the district court." *Forte*, 865 F.2d at 62.

### III.    DISCUSSION

A.    Ground One:  Ineffective Assistance of Trial Counsel

1.    The Parties' Positions

Defendant argues that Attorney Sheesley failed to effectively represent him during sentencing by neglecting "to properly investigate the allege[d] victim's actual loss" in order to ensure that defendant's sentence "wasn't improperly enhanced based on an erroneous calculation of the United States Sentencing Guidelines." [ECF 151] at 2.  Specifically, defendant contends that Attorney Sheesley failed to challenge paragraph 23 of the presentence investigation report ("PSR"), which valued the victim's loss at more than $1.5 million, thereby resulting in a 5-point enhancement of defendant's offense level for Count One under the sentencing guidelines. *Id.* at 3.

The government counters that defendant's argument regarding Attorney Sheesley "is belied by the facts." [ECF 159] at 4.  According to the government, not only did Attorney Sheesley file an objection to the loss calculation in the PSR, but he again challenged the loss calculation at defendant's sentencing hearing.  *Id.*  In addition, the government avers that there was ample evidence in the record to support the District Court's conclusion that the victim suffered a loss of $2 million. *Id.* at 4-5.  Finally, the government argues that under Third Circuit law, the amount of loss in a Hobbs Act robbery is based on the intended rather than the actual loss to the victim.  *Id.* at 5.[7]

---

[7] Upon review of the government's response and accompanying transcript, defendant conceded that Attorney

2. <u>Analysis</u>

With respect to the loss calculation, defendant fails to demonstrate that Attorney Sheesley's performance during sentencing was deficient. First, Attorney Sheesley filed written objections to the PSR. [ECF 90]. Therein, he stated:

> 4. Paragraph 6 of the PSR states that the jewelry that was taken had an overall value of approximately $2 million. Mr. Fredericks objects as there is no credible evidence to suggest that $2 million in jewelry was taken. In fact evidence offered varied substantially and no evidence in the form of receipts of what the wholesale or retail value of the jewelry actually was or is were ever presented.
>
> \* \* \*
>
> 16. Mr. Fredericks objects to the five (5) level increase set forth in paragraphs 23 and 30 as to the amounts of loss to Imperial Jewelry Store. *USSG 2B3.1 Application Note 3* defines "loss" as the value of the property taken, damaged, or destroyed. Implicit in this definition is the permanent depravation of the thing from the owner. The evidence presented is far too unclear, even for purposes of sentencing, to determine that Imperial Jewelry Store suffered over $1.5 million in losses. Some of the jewelry that was permanently missing was in the possession of the VIPD and then was never returned to Imperial Jewelry Store. Furthermore, as stated in paragraph 71 of the PSR the restitution amount that the Government recommends is $678,294.44, the amount of loss for sentencing purposes should not exceed this amount.

*Id.* ¶¶ 4, 16 (emphasis in original).

Attorney Sheesley continued to object to the loss calculation at defendant's sentencing hearing. He began by objecting to the valuation of the jewelry at $2 million:

> In paragraph 6, about midway through the paragraph, it references an overall value of the jewelry of approximately $2 million.
>
> I don't believe that there was any testimony at trial to really fix a number there. And that's something that we're going to be arguing

---

Sheesley in fact objected to the loss calculation in connection with sentencing. [ECF 170].

> whenever we come back to argue enhancement purposes. But I think factually there was not evidence introduced at trial to fix a number as to the value of the jewelry lost.
>
> * * *
>
> Your Honor, I would like to say if you were to believe, by the preponderance of evidence, it's the retail value, if anything that would have been $2 million, not the wholesale value.
>
> * * *
>
> And again, I don't believe that there's anything before the Court sufficient enough to even, by the preponderance of evidence standard, to assign a value to the jewelry of $2 million.

Jan. 29, 2015 Sentencing Hr'g Tr. [ECF 159-1] at 18-19.

Next, Attorney Sheesley cross-examined Deputy Chief U.S. Probation Officer Fitzroy Petty regarding the PSR:

> Q.   And you did not have a detailed listing of the jewelry from the store, is that correct?
>
> A.   No, I did not.
>
> Q.   And you don't have any specific documentation that supports the amounts that are set forth in this letter?
>
> A.   No, there's no specific documentation that supports those amounts. I did request receipts from Mr. Sakhrani, and he indicated to me that it would take some time to put those receipts together. And he has not provided those receipts as of now.

Jan. 29, 2015 Sentencing Hr'g Tr. [ECF 159-1] at 44.

After cross-examining Officer Petty, Attorney Sheesley further noted his objections to the PSR:

> A $2 million loss under Section 2B3.1 of the Guidelines manual puts a level increase of five with respect to my client.
>
> If you look at some of the other numbers, Your Honor, that are

contained in the presentence investigation report, in paragraph 15, it's saying there's an out-of-pocket loss of $200,000. That would merely give a two-level increase as opposed to a five-level increase.

And again, there's, I don't think that there's sufficient evidence for this Court to make the determination, even by the preponderance of evidence standard, that there's a $2 million loss here.

There was other testimony at trial that additional jewelry was lost while in the custody of the Virgin Islands Police Department. That's something that the Court should consider as well.

There's a letter from the offices or law offices of Attorney Leigh Goldman that has been admitted as an exhibit. I don't think the Court should really give that any weight, Your Honor.

That's not a letter from the insurance company. There's nothing that backs up those values.

Officer Petty has stated in his testimony that he doesn't have a specific or detailed listing of the jewelry. He has no documentation that support the amount.

So I think the Court really needs to look at the evidence that's before it, and the severity of this amount and the effect it will have, potentially, on my client's sentencing.

And to say that an individual took the stand and testified at trial, "Hey, there was this amount and that amount was $2 million," I don't think is sufficient, Your Honor.

I think the government needs to be held to a higher burden than that, especially at sentencing. And they've had plenty of time to get individuals here to testify.

If I'm recalling correctly, the date on that letter was January 23rd of this year. That would have been six days ago. That is whenever that information was gotten from Attorney Goldman's office.

This trial occurred in July of last year. This sentencing has been scheduled for quite sometime. So for the government to come here today and say: "We don't have this information; we did ask Mr. Sakhrani and he said it would take a couple of days: "—a couple of days, Your Honor. He didn't say that he couldn't get it, that it would take months, that it was unavailable. He said it would take a couple of days.

> And so for the government to come here and not put on sufficient evidence—and what I'm assuming is that the government, at least in the presentence investigation report, is going to argue for a five-level increase for my client, I think it's improper for this Court to consider that number and to assign a five-level increase with respect to Mr. Fredericks.
>
> * * *
>
> With respect to the loss, Your Honor, I think we really need to look at again what is the evidence presented. I don't think there's a presentation of any specific amount, certainly not of the $2 million, Your Honor.
>
> I think on the very outside, what we're looking at, if the Court wants to consider and give credence to the letter by Attorney Goldman, give credence to the presentence investigation report, that the amount of restitution sought by the insurance company is going to be $678,000 and some change, that would only, under Subsection (d) of—it would be 2B3.1(b)(7)(d), for the $678,000, that would be the three-level increase.
>
> If you look at, again, the presentence investigation report and the letter from Attorney Goldman, that the actual out-of-pocket loss with respect to Imperial Jewelers was $200,000, that would take it down to a two-level increase.
>
> But, Your Honor, I am arguing for today that there has been nothing that this Court can actually determine amount by a preponderance of evidence. So this Court should decide that there is no increase with respect to the offense characteristics.

Jan. 29, 2015 Sentencing Hr'g Tr. [ECF 159-1] at 48-50, 52-53.

Further, even if Attorney Sheesley failed to adequately challenge the PSR's loss calculation, defendant cannot demonstrate any resulting prejudice. First, defendant does not provide any support for his assertion that the "PSR erroneously alleged that the victim's loss was more than 1,500,000, which enhanced Movant's offense level an additional 5 points" under the sentencing guidelines. [ECF 151] at 3. *See Langston v. United States*, 105 F. Supp. 2d 419, 425 (E.D. Pa. 2000) ("It is well settled that conclusory allegations are insufficient to entitle a petitioner

to relief under 2255.").

Second, both the sentencing guidelines and the facts support the District Court's imposition of a five-point enhancement for both Counts One and Two. Defendant was charged in these two counts with conspiracy to commit robbery and robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a). These charges were covered by § 2B3.1 of the 2013 guidelines manual. U.S. SENTENCING GUIDELINES MANUAL § 2B3.1 cmt. stat. provs. (U.S. SENTENCING COMM'N 2013). Further, under § 2B3.1, loss was defined as "the value of the property taken, damaged, or destroyed." U.S. SENTENCING GUIDELINES MANUAL § 2B3.1 cmt. n.3 (U.S. SENTENCING COMM'N 2013).

Further, as explained by the District Court, its conclusion that the value of the loss was $2 million was based on the unrebutted evidence adduced at trial:

> There was testimony, unrebutted at trial, that there was a $2 million loss. That was from Mr. Mirchandani. And the Court will note that while the level of due diligence may not have been ideal, there is certainly evidence that rises to the level of a preponderance of the evidence here.
>
> The Leigh Goldman letter, which bears the signature of Mr. Sakhrani, and the testimony from the witness that he had a conversation with Mr. Sakhrani, and Mr. Sakhrani engaged or preferred to have his loss figures be discussed or shared through his agent.
>
> His agent was Mr. Goldman. Mr. Goldman did precisely what Mr. Sakhrani indicated, and significantly that document was signed by Mr. Sakhrani. Significantly, it indicated that the loss was $2 million.

Jan. 29, 2015 Sentencing Hr'g Tr. [ECF 159-1] at 66-67.[8] *See also Crawford v. United States*,

---

[8] At the sentencing hearing, the District Court also referenced § 2B1.1 of the sentencing guidelines. *See* Jan. 29, 2015 Sentencing Hr'g Tr. [ECF 159-1] at 66 ("With respect to the loss amount, the Guideline is very clear, 2B1.1 makes it very clear that as between actual and intended loss, it is the higher of the two."), *id.* at 67 ("But the Guideline is very clear, Application Note 3A [to section 2B1.1] lists the general rule: 'Subject to the exclusions in Subdivision (b), loss is the greater of the actual loss or intended loss.'"). However, the PSR referenced § 2B3.1 of the guidelines in its offense level computations for Counts One and Two. *See* PSR at 7 ("Because the loss exceeded 1.5 million but

2017 WL 971039, at *6 (D. Del. Mar. 13, 2017) (holding that counsel was not ineffective under § 2255 where he failed to challenge the loss amount, which was calculated in accordance with the sentencing guidelines and supported by evidence presented at trial); *United States v. Komolafe*, 2008 WL 4104442, at *3 (W.D. Pa. Sept. 2, 2008) (same); *United States v. Brown*, 65 F. Supp. 2d 321, 323 (E.D. Pa. 1999) (same).

Finally, the Court notes that defendant, in his reply, concedes that Attorney Sheesley did object to the government's loss calculation: "After reading the government's response—and the copy of the Sentencing Transcripts provided by the government—Fredericks concedes that his attorney did in fact object to the loss amount." [ECF 170] at 1.

B.      Ground Two:  Ineffective Assistance of Appellate Counsel

Defendant also argues that Attorney DiRuzzo, defendant's appellate counsel, failed to effectively represent him by neglecting to appeal the Court's allowance of a five-point enhancement based on the dollar amount of the victim's loss. [ECF 151] at 4. The government counters that Attorney DiRuzzo made a strategic decision not to challenge the amount of loss and to instead challenge the constitutionality of the Hobbs Act. [ECF 159] at 6. Such a decision, the government concludes, does "not give rise to relief under 28 U.S.C. § 2255." *Id.* In his reply, defendant contends that the very fact that trial counsel objected to the loss amount supports his contention that appellate counsel should have done the same. [ECF 170] at 2. In addition, defendant avers that because the sentencing guidelines were being amended while Attorney DiRuzzo was finalizing defendant's appeal, Attorney DiRuzzo should have raised the issue of loss

---

was less than 2.5 million, the offense level is increased five levels. USSG§2B3.1(b)(7)(F).") In addition, the District Court expressly adopted the enhancements recommended in the PSR: "So the Court finds that the amount is appropriate, so that's the enhancement that is in the Presentence Report, that's a plus five enhancement for loss that exceeds 1.5 million but is less than 2.5 million, that that is appropriate." Jan. 29, 2015 Sentencing Hr'g Tr. [ECF 159-1] at 67. Thus, it is unclear what role, if any, § 2B1.1 played in the District Court's sentencing calculation.

calculation so that the Third Circuit could "have been afforded the opportunity to remand the case for resentencing."[9] *Id.*

Although Attorney DiRuzzo chose not to raise the issue of loss calculation on appeal,[10] as it did with respect to Attorney Sheesley's performance, the Court similarly concludes that Attorney DiRuzzo's performance was not deficient. Once again, defendant cannot demonstrate any resulting prejudice; the District Court appropriately enhanced defendant's offense level by five points based on the unrebutted evidence at trial that the jewelry store suffered a $2 million loss.

## IV.   CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED as follows:

(1)   that defendant's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" [ECF 150] be DENIED without an evidentiary hearing; and

(2)   that a certificate of appealability be DENIED.[11]

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time shall bar the

---

[9] Defendant claims that Amendment 792 to the sentencing guidelines "reflects the Commission's continued belief that intended loss is an important factor in economic offenses, but also recognizes that sentencing enhancements predicated on intended loss, rather than losses that have actually accrued, should focus more specifically on the defendant's culpability." [ECF 170] at 2. However, it is unclear how this advances defendant's position.

[10] Attorney DiRuzzo raised two issues on appeal: "(1) whether the Hobbs Act is unconstitutional as applied to this case, and (2) whether [defendant] was denied his due process rights when the jury saw him and [a co-defendant] shackled in the courtroom." *Fredericks*, 684 F. App'x at 155. Neither argument was successful. *Id.* at 162-65.

[11] When a district court issues a final order on a § 2255 motion, it must also determine whether it will permit a certificate of appealability. 3d Cir. L.A.R. 22.2; Fed. R. App. P. 22(b)(1). A district court will issue a certificate of appealability only upon a finding of a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating that a certificate of appealability shall issue only if the petitioner establishes "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling"). Here, the record fails to show a violation of petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

**Dated:** March 19, 2020              S\_____
                                                            **RUTH MILLER**
                                                            United States Magistrate Judge